**LAW OFFICES ROSEMARIE ARNOLD, LLP**
1386 Palisade Avenue
Fort Lee, New Jersey 07024
(201) 461-1111
Attorneys for Plaintiff
Attorney ID No.: 034241986
Filing Attorney ID No.: 328222022
**Our File No.: 224935**

| | |
|---|---|
| JOHN DOE, whose initials are W.K., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY |
| Plaintiff, | DOCKET NO.: HUD-L-1475-25 |
| vs. | *CIVIL ACTION* |
| VIRGIL MILLER NEWTON, KIDS OF NORTH JERSEY, INC., its agents, servants and/or employees, KIDS CENTERS OF AMERICA, its agents, servants, and/or employees, STRAIGHT FOUNDATION, INC., its agents, servants, and/or employees, DRUG FREE AMERICA FOUNDATION, INC., its agents, servants and/or employees, "ABC CORP 1-10", and "JOHN AND/OR JANE DOES 1-10" (the last three being fictitious designations), | **SUMMONS** |
| Defendants. | |

$\bigcirc$TP
$05/20/25$
$9:45$am
APS. $59228$

### THE STATE OF NEW JERSEY, TO THE ABOVE-NAMED DEFENDANT (S):

#### DRUG FREE AMERICA FOUNDATION, INC.
#### ATTN: OWNER/MANAGER/SUPERVISOR

THE PLAINTIFF, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within thirty-five (35) days after the service of the Summons and Complaint upon you, exclusive of the day of service. If the complaint is one in foreclosure, then you must file your written answer to motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to the plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ 175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written Answer or Motion within 35 days, the Court may enter a Judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford to pay an attorney, call a Legal Services Office. An individual not eligible for free legal assistance may obtain a referral to an attorney by calling a County Lawyer Referral Service. These numbers may be listed in the yellow pages of your phone book or may be obtained by calling the New Jersey State Bar Association Lawyer Referral Service, toll free (800) 792-8315 (within New Jersey) or (609) 394-1101 (from out of state). The phone numbers



DEFENDANT'S
EXHIBIT

**A-1**

of the County in which this action is pending are: See attached.

_/s/ Michelle M. Smith, Clerk_

MICHELLE M. SMITH, CLERK

Dated: April 17, 2025

**Name of Defendant(s):**      **DRUG FREE AMERICA FOUNDATION, INC.**

**Address to be Served:**

**LAW OFFICES ROSEMARIE ARNOLD**
1386 Palisade Avenue
Fort Lee, New Jersey 07024
(201) 461-1111
Attorneys for Plaintiffs
Attorney ID No.: 328222022
Filing Attorney ID No.: 328222022
Our File No.: 224935

| | |
|---|---|
| JOHN DOE, whose initials are W.K., <br><br> Plaintiffs, <br><br> vs. <br><br> VIRGIL MILLER NEWTON, KIDS OF NORTH JERSEY, INC., its agents, servants and/or employees, KIDS CENTERS OF AMERICA, its agents, servants, and/or employees, STRAIGHT FOUNDATION, INC., its agents, servants, and/or employees, DRUG FREE AMERICA FOUNDATION, INC., its agents, servants and/or employees, "ABC CORP 1-10", and "JOHN AND/OR JANE DOES 1-10" (the last three being fictitious designations), <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION: HUDSON COUNTY <br><br> DOCKET NO.: HUD-L- <br><br> CIVIL ACTION <br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiff, JOHN DOE, whose initials are W.K, by his attorneys, LAW OFFICES ROSEMARIE ARNOLD, LLP respectfully alleges, upon information and belief, as follows:

## THE PARTIES

1.  Plaintiff JOHN DOE, whose initials are W.K., (hereinafter "Plaintiff" or "John Doe" or "Plaintiff John Doe") resides in New York State and can be reached through his attorneys, The Law Office of Rosemarie Arnold, LLP, at 1386 Palisade Avenue, Fort Lee, New Jersey 07024.

2. A pseudonym for the Plaintiff is used to preserve privacy in this matter, which is sensitive and highly personal in nature, identification of Plaintiff poses a risk of mental harm, harassment, ridicule and/or personal embarrassment, and because the case involves information of the utmost intimacy. **Plaintiff's application to proceed anonymously is being filed simultaneously with this Complaint.**

3. At all times relevant hereto, from approximately 1991 to 1992, Plaintiff was a minor involuntarily confined at Defendant KIDS OF NORTH JERSEY (hereinafter "Defendant KONJ" or "KONJ") and/or KIDS CENTERS OF AMERICA (hereinafter "Defendant KCOA" or "KCOA") and/or STRAIGHT FOUNDATION, INC. (hereinafter "Defendant Straight" or "Straight") and/or DRUG FREE AMERICA FOUNDATION, INC., (hereinafter "Defendant DFAF" or "DFAF").

4. Defendants KONJ, KCOA, Straight, and DFAF may hereinafter collectively be referred to as "Institutional Defendants."

5. At all times relevant hereto, the Institutional Defendants were/are a chain of "drug treatments centers" known for their well-documented and confirmed horrifying mental, physical, and sexual abuse upon tens of thousands of children, which is a conservative estimate, including Plaintiff.

6. Upon information and belief, Institutional Defendants were owned and operated in part by Defendant VIRGIL MILLER NEWTON (hereinafter "Miller Newton" or "Defendant Miller Newton").

7. Upon information and belief, Defendants KCOA, KONJ, and Straight are defunct entities, corporations, parent companies, shell companies, and/or non-profits.

2

8.       Upon information and belief, in an effort to distance themselves from allegations of child abuse[1], KONJ, KCOA, and Straight were renamed DFAF in 1995, which operates "drug treatment centers" to this day.

9.       As Defendant Miller Newton opened, operated, and closed several different corporate entities, it is unclear which entity owned and operated the KONJ Secaucus facility at the time Plaintiff was involuntarily confined and abused, but this will be fully explored during discovery.

10.      Defendants ABC CORP 1-5 and/or JOHN DOE 1-5 and/or JANE DOE 1-5 are fictitious names and represent entities and/or individuals who may bear responsibility for the sexual abuse and assaults described herein, but whose identities cannot be ascertained as of the filing of this Complaint. Such fictitious defendants may include, but are not limited to, current and/or former employees, agents, and/or servants of Defendants, individuals associated with any of the Defendants, and/or entities associated with any of the Defendants. Plaintiff hereby reserves the right to amend this Complaint upon learning the true identities of these defendants through discovery.

11.      All Defendants may hereinafter collectively be referred to as "Defendants."

## FACTS COMMON TO ALL COUNTS

### *Background*

12.      In May 1984, Defendants opened KIDS of Bergen County ("KOBC") in Hackensack, New Jersey.

---

[1] http://thestraights.net/miller-newton-story.htm

13.    In April 1989, the Bergen County Prosecutor's Office found that the children at KOBC suffered from, *inter alia*, black eyes, strip searches, sleep deprivation, solitary confinement, and denial of right to leave when some clients reached the age of 18.

14.    In August 1990, 20 Bergen County officials descended upon KOBC to question children about the abuse they suffered at the hands of Defendants.

15.    Shortly after Bergen County prosecutors moved on KOBC in August 1990, Defendants moved their operations to a warehouse in Secaucus, New Jersey (pictured below), and changed the program's name to KIDS of North Jersey (KONJ).



Pictured above is the KONJ warehouse located at 200 Seaview Avenue in Secaucus, New Jersey where Plaintiff was involuntarily confined and abused. Marker "a" points to a blackened area which was the glass front for KIDS which occupied a small corner of the warehouse. Marker "b" points to a neighboring warehouse.

16.    However, the allegations and charges of child abuse continued mounting against Defendants despite the name change and relocation to Hudson County.

17.    Inside this windowless, dark warehouse, the staff members and employees of Defendants inflicted horrifying mental, physical, and sexual abuse upon hundreds of children, including Plaintiff, in the 1990s.

18.    From 1991 through 1992, the then-minor Plaintiff was confined against his will at the warehouse located at 200 Seaview Avenue in Secaucus, New Jersey. Such premises were

4

owned, operated, supervised, maintained, controlled, and inspected by Defendants and their agents, servants, and employees.

19.    Plaintiff was sexually harassed, abused, and assaulted while involuntarily confined at Defendants' warehouse in Secaucus, New Jersey when he was a minor.

20.    Defendants' former staff members allege that Defendant Miller Newton directed them to physically assault children and stated he would "turn his back" while they did so. See West 57th KIDS and Straight Inc., Virgil Miller Newton Exposed, Part 1, CBS, 1989, at 6:00.

21.    In 1993, three counselors were convicted of beating a child at the KONJ facility. One of the counselors, Michael O'Connor, said that beatings were "routine" at KONJ. Judge Emil DelBaglivo, the Secaucus trial judge, publicly remarked that it was "almost unbelievable" that the director of the program, a man with "supposedly " strong credentials, would allow and condone the use of violence. "We find the institution highly questionable and someone should look into it," he said. "We think there's something radically wrong." See http://thestraights.net/miller-newton-story.htm *and* The Record, dateline Secaucus, p. d01, 12-24-93, author Neal Thompson.

22.    The above are just a few examples of the well-documented horrific abuse and torture inflicted upon children by Defendants under the guise of "rehabilitation." There are various websites dedicated solely to memorializing the stories of survivors who suffered abuse and torture at Defendants' facilities.

23.    It is abundantly clear based upon the mountain of evidence that the sexual and physical abuse of children in Defendants' facilities was well reported and well known before, during, and after Plaintiff's abuse, yet Defendants intentionally failed to act on such reports and knowledge.

24.     At all times relevant hereto, the Defendants, including their agents, servants, and employees, were in the business of providing care, and supervision to minor children, such as Plaintiff.

25.     At all times relevant hereto, Plaintiff was a minor under the care and supervision of the Defendants and their agents, servants, and employees.

26.     At all times relevant hereto, Defendants had a heightened duty to properly safeguard and supervise children over whom they assumed the care, custody, and control including Plaintiff.

27.     At all times relevant hereto, Defendants breached that duty by failing to properly safeguard, supervise, care for, and protect the then-minor Plaintiff from harm while he was under their care and supervision, which has caused Plaintiff to become seriously and permanently injured.

### *Plaintiff John Doe's Story*

28.     In 1991, Plaintiff was a young recording artist in New York City with a promising future and bright career ahead as a hip hop artist. By the age of 16, Plaintiff had performed as the opening act for famous rappers, such as Ice Cube, and had recorded original tracks.

29.     Sadly, as Plaintiff was just embarking upon his career as a successful musician, his father caught him smoking marijuana and, for what his father believed to be for Plaintiff's own good, made secret plans to send him away to the Institutional Defendant's program for his "drug use."

30.     In 1991, Plaintiff was only 16 years old when he was violently kidnapped while sleeping by a security guard employed by Institutional Defendants, forced into a van, and driven

to the warehouse in Secaucus, New Jersey. Plaintiff was taken from his home without any belongings, clothes, a toothbrush, or any personal effects.

31.    Understandably, Plaintiff felt terrified and confused, and his chest was pounding so intensely that he believed he was experiencing a heart attack.

### *The Kids of North Jersey Program*

32.    When he arrived at the warehouse, Plaintiff was forced to adhere to Defendants five-phase program.

33.    All children started off in the first phase and were called "newcomers." As a newcomer in the first phase, Plaintiff was forced to spend 7 days a week, 24 hours per day, for the first 4 months, confined to the warehouse in Secaucus, New Jersey.

34.    The main group room, where Plaintiff spent the majority of his time, has been described as a huge, empty room with a cold, hard, tile floor, and high ceilings with fluorescent lighting and filled with blue chairs.

35.    "Court papers and people who attended KIDS described it as a warehouse where "newcomers" would sit on blue chairs in a large group for 12 hours a day, confessing their mistakes and chanting about honesty, sexual abstinence, and kicking drugs." See Lingering Torment from Rough    Therapy,    Religion    News    Blog,    April    9,    2000, https://www.religionnewsblog.com/17239/kids-of-north-jersey.

36.    Plaintiff tried to escape the warehouse on the first day he arrived, but he was immediately tackled by about 20 people who violently restrained him, pulled his hair, and threw him onto the ground.

37.    From this point forward, Plaintiff was forcefully drugged by Defendants' staff members to make him docile and to prevent any further escape efforts.

7

38.     Plaintiff, as well as all the other children confined to the Defendants' warehouse, were completely cut off from friends, family and the entire outside world. They were not allowed to speak or read freely and would be punished for even reading off a cereal box.

39.     The children, including Plaintiff, were expected to sit all day in the blue chairs, facing forward, with their backs straight, and their hands on their knees.

40.     All children, including Plaintiff, were forced to participate in "rap sessions" where they had to engage in an activity called "motivating," which involved them flailing their hands in the air and making odd sounds.

41.     The 12-hour "rap sessions" were depicted in CBS documentary West 57th KIDS and Straight Inc., Virgil Miller Newton Exposed, Part 1, CBS, 1989. The documentary shows the children sitting in blue chairs in a windowless room while flapping their arms wildly in the air. The narrator stated that children "get attention by flapping their arms, it's called motivating. If they motivate hard enough, they get to talk about their "problems." Id. at 2:25.

42.     One child was rushed to the hospital with bleeding from the scalp and blurred vision after being dropped on his head during a "rap session." See West 57th KIDS and Straight Inc., Virgil Miller Newton Exposed, Part 2, CBS, 1989, at 1:00.

43.     When Plaintiff refused to participate in the "rap sessions" he was thrown to the ground and violently restrained by multiple staff members. During the restraints, Defendants' staff members and employees often groped Plaintiff's penis and testicles while they held him on the ground for extended periods of time.

44.     Many children, including Plaintiff, were forced to share made-up stories about their "past struggles," even if they had no past struggles to disclose. Failing to make up a story about

8

prior drug use or "sexual deviance" would result in severe punishment, such as physical violence, restraints, and deprivation of food and water.

45.     Plaintiff and the other children were forced to walk in what has been described as a "chain gang" anytime they went anywhere, even to the shower or bathroom. Each child was forced to place their fingers in the belt loops of the pants of the child or staff member in front of them to create the "chain gang."

46.     The "chain gang" style walking was depicted in the CBS documentary West 57th KIDS and Straight Inc., Virgil Miller Newton Exposed, CBS, 1989. The documentary shows the children walking with their hands attached to the pants of the person in front of them; the narrator described it as follows "first phasers are belt looped, lead everywhere, even to the bathroom, by more senior phasers." Id. at 3:25.

47.     If the children let go of the belt loops of the person in front of them, the child was thrown to the ground and violently restrained for extended periods of time while the staff and employees used all their weight to hold the children down so they could not move at all.

48.     The children were not permitted to spend any time alone, even in the bathroom and shower.

49.     Plaintiff was forcibly drugged by Defendants' employees and staff, including purported "doctors."

50.     While Plaintiff was not advised of the names of the drugs he was forced to ingest, he recalls that the medications caused him to be groggy, subdued, and docile.

51.     On one occasion, Plaintiff was forced to take a large pill that made him shake violent uncontrollably until he passed out; as a result, Plaintiff was unable to function for several days and believed he was dying.

9

52.     There are periods of time where Plaintiff has little recollection of what happened because he was so severely drugged.

53.     Plaintiff was often violently restrained by Defendants' adult employees, staff, and counselors.

    a.     To be restrained, Plaintiff and other children were forced onto their stomachs, flattened out, and restrained by 5 different counselors and staff members.

    b.     This was referred to as "5-point restraint" because it required 5 individuals to restrain 1 child.

    c.     The children, including Plaintiff, were restrained in this painful position for hours at a time.

    d.     During the restrain process, the children were also sexually abused, which is discussed further below.

    e.     Plaintiff was restrained in a "5-point-restraint" 2-3 times each week, sometimes more.

    f.     Plaintiff was regularly choked, slapped, thrown to the ground and restrained with his arms, hands, neck, and ankles twisted and his face shoved to the ground.

    g.     In a CBS News Documentary, 2 former patients that became staff members admitted to physically abusing children at the facilities [under the direction of Defendants] and restraining them on the floor for up to 9.5 hours while the kids cried and screamed. See KIDS and Straight, Inc., Part 2, CBS News, date unknown, at 1:30.

### *Sexual Abuse at The Kids of North Jersey Warehouse*

54.     Defendants' employees and staff members ripped Plaintiff's clothes off, threw him into the shower, and watched as he bathed himself on a regular basis.

10

55. Upon Plaintiff's arrival to Defendants' warehouse, he was quickly approached by one of the counselors, Shannon, who tried to persuade Plaintiff to have sex with him.

56. After this, countless other adult counselors and staff members propositioned Plaintiff for sex.

57. On Plaintiff's first day in the warehouse, about 5 counselors and staff members violently ripped off his clothes, touched and groped his penis and testicles for sexual gratification, and threw him in the shower. This happened on a regular basis throughout the time Plaintiff was detained in the warehouse.

58. Defendants' adult employees, counselors, and staff members routinely gawked at Plaintiff's penis and testicles as they watched him shower or use the bathroom.

59. During the process of the 5-point restraint, as referenced above, the adult counselors and staff sat on Plaintiff's chest and rubbed their penises and testicles on Plaintiff's chest and body.

60. On at least one occasion, Plaintiff was restrained for no reason as he was exiting the shower completely naked. The adult staff members violently tackled Plaintiff to the ground and sat on him while rubbing their bodies on his bare penis for sexual gratification.

61. One of the counselors, Shannon, pulled down Plaintiff's pants and underwear on at least one occasion and told all the other children to "look at [Plaintiff's] penis."

62. Many adult members of the Defendants' staff frequently revealed their own penises and testicles to Plaintiff and the other children on a regular basis for their own perverse sexual gratification.

63. In 2007, Nick Gaglia, who was involuntarily confined at the KONJ warehouse with Plaintiff, made a film about the abuse he endured titled "Over the GW."

11

64.     Mr. Gaglia also addressed Congress on Capitol Hill on February 19, 2009, to speak about the horrific abuse and torture he experienced at KONJ. See https://www.imdb.com/video/vi1229390361/?ref_=nm_vids_vi_6.

65.     During his speech, he detailed how he was sexually assaulted by staff members while being restrained.

66.     Mr. Gaglia was sexually abused by staff members at the KONJ warehouse and since his escape he has been told many stories of rape and molestation from other survivors of KIDS. See Laura Tompkins, Nick Gaglia – The Cult – KIDS of North Jersey, Patch, July 26, 2013.

### *Continued Sexual Abuse in the Host Homes*

67.     After being completely confined to the warehouse 24 hours a day for his first 3-4 months in the program, Plaintiff began to transition to various host homes at night.

68.     Although Plaintiff was transferred to host homes at night to sleep, he was still forced to spend all day, every day in the Secaucus warehouse. He was transported to a host home only for sleep and then transported back to the warehouse early each morning.

69.     The host homes were the actual dwellings of higher-level children, usually phase four or five, and their parents, also known as host parents.

70.     All the host homes were equipped with bars and locks on the doors and windows to prevent the children from escaping.

71.     Defendants' adult employees and staff members stayed in the host homes with the children ostensibly to prevent them from escaping, but used their positions of power and privacy in the host homes to sexually abuse the children.

72.     The host homes were, for all intents and purposes, unregulated and unlicensed foster homes.

12

73.     At the host homes, Plaintiff was not allowed to leave or go outside, he was not even permitted to look out the windows and could face severe punishment for doing so.

74.     Each host home had at least 1 staff member or counselor who had complete control over all the children.

75.     At the host homes, the staff members and counselors carried out the same abusive practices and tactics that were undertaken in the warehouse.

76.     Plaintiff was frequently restrained, thrown on the ground, and choked by the staff and counselors while they forcefully grabbed Plaintiff's penis and testicles for their own sexual gratification.

77.     The staff members and counselors also exposed their genitals to Plaintiff and the other children in the host homes and forced Plaintiff to expose his genitals as well.

78.     The male counselors and staff would engage in sex acts with each other and some of the children while Plaintiff and the others were forced to watch.

### *Escaping the Program*

79.     Eventually, Plaintiff was able to stop taking the medications Defendants were forcing upon him by hiding it under his tongue and discarding it when staff members were not looking.

80.     Plaintiff was very careful to avoid detection because that would result in him being forcibly injected with the medications.

81.     When he stopped taking the medications, Plaintiff was able to think clearly and plan his escape from the brutal torture and abuse he endured daily in the program.

82.     Sometime in 1992, Plaintiff was finally able to escape the program by running from the host home he was staying at in Fort Lee, New Jersey. He was 17 years old at the time.

83.     On the day he escaped, Plaintiff was walking out of the host home in a "chain gang" with the other children, including three other children.

84.     As the "chain gang" was walking outside from the host home to the car that was intended to transport them to the warehouse, Plaintiff jerked the fingers of the child behind him out of his belt loops and yelled "that's it!!" The boys looked at each other briefly and then started running away from the host home as fast as they could.

85.     One child, who was only 15 years old at the time, got scared and ended up returning to the host home when the boys were about 1 block away.

86.     The other 3 boys, including Plaintiff, continued running for several blocks until they stopped to walk.

87.     The boys walked to the George Washington Bridge and decided to part ways, with 2 of the boys staying in New Jersey and Plaintiff returning to New York.

88.     In 1998, the KIDS of North Jersey program was closed down by state regulators for child abuse.

### *Life After the Program*

89.     Although Plaintiff had a promising music career before he was kidnapped and forced into the Defendants' program, he became severely depressed and suffered from debilitating PTSD, nightmares, flashbacks, hot flashes, anger, agitation, heart palpitations, and so many other physical and emotional manifestations of the abuse and trauma he endured in the program, which has completely and permanently eradicated his ability to focus on a musical career to this day.

90.     At 50 years old, Plaintiff has no job, no career, and lives with his father as he has no other options and is financially destitute because of the grievous trauma that has ravaged his life since escaping the Defendants' program.

14

91. Plaintiff also experiences memory loss from being heavily drugged during his time at Defendants' facilities and his personality was completely changed by the time he finally escaped.

92. Plaintiff was merely a shell of the bright, young child he was before the program inflicted its violence, cruelty, and abuse upon him.

93. Since his escape, Plaintiff has been hospitalized in a psych ward on several occasions due to PTSD from the program.

94. As a direct result of the abuse, Plaintiff still experiences anxiety, depression, and symptoms of PTSD.

95. Plaintiff is still consistently haunted by the harrowing sexual abuse he endured as a child at the hands of Defendants and the long-lasting, debilitating trauma resulting from such abuse will serve as a constant reminder of same until the day he dies.

96. To say that Defendants ruined Plaintiff's life is a vast understatement.

97. The allegations set forth above are not intended to be an exhaustive list of all the allegations against Defendants, but merely a representative sample.

## FIRST CAUSE OF ACTION
### Sexual Abuse of a Minor
### In Violation of the Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1, *et seq.* and the
### Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

98. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

99. The factual allegations set forth above sufficiently demonstrate that Defendants, including its agents, servants and employees, sexually abused Plaintiff while he was a minor under the age of 18 and under their care, custody, and control.

15

100.    The conduct of Defendants, including its agents, servants and/or employees, rises to the level of sexual abuse and sexual contact as defined by the New Jersey Child Sexual Abuse Act.

101.    At all times relevant hereto, Defendants, including their agents, servants, and/or employees, were aware, or at the very least should have been aware, of the sexual abuse occurring at their facilities and perpetrated by their agents, servants, and/or employees.

102.    At all times relevant hereto, Defendants, including their agents, servants, and employees, caused and/or knew and/or should have known of their employees, staff members, and counselors' sexual proclivities towards minors and the sexual abuse of Plaintiff, a minor under their care.

103.    At all times relevant hereto, pursuant to the New Jersey Child Sexual Abuse Act, Defendants stood *in loco parentis* to Plaintiff.

104.    At all times relevant hereto, Defendants had a duty to properly safeguard and supervise minors over whom they assumed the care, custody, and control, including Plaintiff.

105.    At all times relevant hereto, Defendants had a duty to exercise reasonable care and to hire, utilize, train, supervise, and retain only competent, qualified, and trained employees to authorize, organize, create, set up, operate, staff, manage, maintain, control, and supervise its facilities and to safeguard and supervise the minors under their custody.

106.    At all times relevant hereto, Defendants breached the aforementioned duties by failing to properly safeguard, supervise, care for, and protect the minor Plaintiff from harm while he was under their care and supervision, which has caused Plaintiff to become seriously and permanently injured.

16

107.   At all times relevant hereto, Defendants breached the aforementioned duties by negligently hiring, improperly training, supervising, and retaining Defendants' employees, staff, and counselors whom Defendants caused and/or knew and/or should have known were unfit for their job and had unlawful sexual proclivities towards minors.

108.   At all times relevant hereto, Defendants breached the aforementioned duties by failing to institute appropriate precautions and preventative measures to safeguard minors, including Plaintiff, from being left alone or unsupervised with Defendants' employees, staff, and counselors who had unlawful sexual desires for minors.

109.   As a direct and proximate cause and reasonably foreseeable result of the sexual abuse, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## SECOND CAUSE OF ACTION
### Sexual Assault and Battery of a Minor
### In Violation of New Jersey Common Law and
### the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq*.
### Against Individual Defendants Virgil Miller Newton and John and/or Jane Does 1-10

110.   Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

111.   The factual allegations set forth above sufficiently demonstrate that Defendants sexually assaulted and battered Plaintiff, a minor, on the premises of the Defendants.

112.   Defendants committed the assault and battery with the intent to cause harm to Plaintiff.

113.   As a direct and proximate cause and reasonably foreseeable result of the sexual abuse, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Individual Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## THIRD CAUSE OF ACTION
### Negligence, Including Negligent Hiring, Training, Supervision, and Retention
### In Violation of New Jersey Common Law, the Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1, *et seq.* and the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

114.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115.    At all times relevant hereto, Plaintiff was a minor under the care and supervision of the Defendants and their agents, servants, and employees.

116.    At all times relevant hereto, pursuant to the Child Sexual Abuse Act, the Defendants stood *in loco parentis* to Plaintiff.

117.    At all times relevant hereto, Defendants had a duty to properly safeguard and supervise children over whom they assumed the care, custody, and control, including Plaintiff, which includes the duty and obligation to take reasonable precautions for the child's safety and well-being.

118.    At all times relevant hereto, Defendants had a duty to exercise reasonable care and to hire, utilize, train, supervise, and retain only competent qualified, and trained employees to authorize, organize, create, set up, operate, staff, manage, maintain, control, and supervise its facility and to safeguard and supervise the children.

119.    At all times relevant hereto, Defendants breached the aforementioned duties by failing to properly safeguard, supervise, care for, and protect minor Plaintiff from harm while he was under their care and supervision, which has caused Plaintiff to become seriously and permanently injured.

120. At all times relevant hereto, Defendants breached the aforementioned duties by negligently hiring, improperly training, supervising, and retaining their employees, staff, and counselors.

121. At all times relevant hereto, Defendants breached the aforementioned duties by failing to institute appropriate precautions, preventative measures, and policies to safeguard the children under their care from being left alone or unsupervised with unfit employees, staff, and counselors who had unlawful sexual proclivities towards minors.

122. All of the acts of sexual abuse and sexual contact occurred when Plaintiff was a minor child under the care, custody, and control of Defendants and while he was on their premises and in their facilities.

123. At all times relevant hereto, Defendants, including their agents, employees, and staff, caused and/or knew and/or should have known that Plaintiff was being sexually abused by agents and employees under their supervision and control.

124. As a direct and proximate cause and reasonably foreseeable result of the sexual abuse, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with

20

interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## FOURTH CAUSE OF ACTION
### Discrimination, Harassment, and Hostile Environment on the Basis of Sex
### In Violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*
### Against All Defendants

125.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

126.    As established by the factual allegations set forth herein, Plaintiff was subjected to discrimination, harassment, and a hostile environment on account of his sex/gender.

127.    Plaintiff would not have been subjected to such discrimination, harassment, and hostile environment but for the fact that he is a male.

128.    Any reasonable person of the same age, maturity level, and sex as Plaintiff would have considered the discrimination, harassment, and hostile environment to which Plaintiff was subjected to be sufficiently severe and pervasive enough to create an intimidating, hostile, and offensive environment.

129.    Plaintiff was a minor under the care and supervision of the Defendants and their agents, servants, and employees.

130.    As a direct and proximate cause and reasonably foreseeable result of the discrimination, harassment, and hostile environment, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

21

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

**FIFTH CAUSE OF ACTION**
*Respondeat Superior*
**In Violation of New Jersey Common Law and
the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
Against All Defendants**

131.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

132.     The School Defendants are liable for the negligent acts and/or omissions of their agents, servants, and/or employees under the doctrine of *respondeat superior.*

133.     As a direct and proximate cause and reasonably foreseeable result of the intentional conduct, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### In Violation of New Jersey Common Law and
### the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

134.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

135.    As established by the factual allegations set forth above, Defendants' intentional, or at the very least reckless, conduct was extreme and outrageous and caused Plaintiff to suffer extreme, severe emotional distress.

136.    As a direct and proximate cause and reasonably foreseeable result of the intentional conduct, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## SEVENTH CAUSE OF ACTION
### False Imprisonment
### In Violation of New Jersey Common Law and
### the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq*.
### Against All Defendants

137.   Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

138.   As established by the factual allegations set forth above, Defendants knowingly and unlawfully restrained Plaintiff against his will and interfered with his liberty and freedom of movement.

139.   At all times relevant hereto, Defendants intended to cause confinement.

140.   As a direct and proximate cause and reasonably foreseeable result of the false imprisonment, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Hannah E. Bacon, Esq. is designated as trial counsel.

## DEMAND FOR DISCOVERY OF INSURANCE INFORMATION

Pursuant to R. 4:10-2(b) demand is made that Defendants disclose to undersigned counsel whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action, or indemnify or reimburse of payments made to satisfy the judgment, and provide undersigned counsel copies of any such agreements or policies.

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any court or arbitration proceeding, that no such other action or arbitration proceeding is contemplated by this Plaintiff, and that there are no other parties, whom, to the knowledge of the Plaintiff's counsel, should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: April 17, 2025

/s/ Hannah E. Bacon
HANNAH E. BACON

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-001475-25

**Case Caption:** DOE JOHN VS MILLER NEWTON VIRGIL

**Case Initiation Date:** 04/17/2025

**Attorney Name:** HANNAH E BACON

**Firm Name:** ROSEMARIE ARNOLD LLP

**Address:** 1386 PALISADE AVE

FORT LEE NJ 07024

**Phone:** 2014611111

**Name of Party:** PLAINTIFF : DOE, JOHN

**Name of Defendant's Primary Insurance Company**

(if known): Unknown

**Case Type:** ASSAULT AND BATTERY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same**

**transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: JOHN DOE?** YES
**Plaintiff's date of birth:** 10/03/1974
**Est. date of first incident of abuse:** 01/01/1991

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/17/2025
Dated

/s/ HANNAH E BACON
Signed

**LAW OFFICES ROSEMARIE ARNOLD, LLP**
1386 Palisade Avenue
Fort Lee, New Jersey 07024
(201) 461-1111
Attorneys for Plaintiff
Attorney ID No.: 034241986
Filing Attorney ID No.: 328222022
**Our File No.: 224935**

| | |
|---|---|
| JOHN DOE, whose initials are W.K.,<br><br>Plaintiff,<br><br><br>VIRGIL MILLER NEWTON, KIDS OF NORTH JERSEY, INC., its agents, servants and/or employees, KIDS CENTERS OF AMERICA, its agents, servants, and/or employees, STRAIGHT FOUNDATION, INC., its agents, servants, and/or employees, DRUG FREE AMERICA FOUNDATION, INC., its agents, servants and/or employees, "ABC CORP 1-10", and "JOHN AND/OR JANE DOES 1-10" (the last three being fictitious designations),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: HUDSON COUNTY<br><br>DOCKET NO.: HUD-L-1475-25<br><br>*CIVIL ACTION*<br><br>**SUMMONS** |

*(handwritten)* APr. S92
05/20/25
9:45am

#### THE STATE OF NEW JERSEY, TO THE ABOVE-NAMED DEFENDANT (S):

#### STRAIGHT FOUNDATION, INC.
#### ATTN: OWNER/MANAGER/SUPERVISOR

THE PLAINTIFF, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within thirty-five (35) days after the service of the Summons and Complaint upon you, exclusive of the day of service. If the complaint is one in foreclosure, then you must file your written answer to motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Clerk of the Superior Court and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to the plaintiff's attorney whose name and address appear above, or to the plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $ 175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written Answer or Motion within 35 days, the Court may enter a Judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford to pay an attorney, call a Legal Services Office. An individual not eligible for free legal assistance may obtain a referral to an attorney by calling a County Lawyer Referral Service. These numbers may be listed in the yellow pages of your phone book or may be obtained by calling the New Jersey State Bar Association Lawyer Referral Service, toll free (800) 792-8315 (within New Jersey) or (609) 394-1101 (from out of state). The phone numbers

**DEFENDANT'S EXHIBIT A-2**

for the county in which this action is pending are:   See attached.

*/s/ Michelle M. Smith, Clerk*

MICHELLE M. SMITH, CLERK

Dated: April 17, 2025

**Name of Defendant(s):**    **STRAIGHT FOUNDATION, INC.**

**Address to be Served:**

**LAW OFFICES ROSEMARIE ARNOLD**
1386 Palisade Avenue
Fort Lee, New Jersey 07024
(201) 461-1111
Attorneys for Plaintiffs
Attorney ID No.: 328222022
Filing Attorney ID No.: 328222022
Our File No.: 224935

| | |
|---|---|
| JOHN DOE, whose initials are W.K., | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: HUDSON COUNTY |
| Plaintiffs, | |
| | DOCKET NO.: HUD-L- |
| vs. | |
| | CIVIL ACTION |
| VIRGIL MILLER NEWTON, KIDS OF | |
| NORTH JERSEY, INC., its agents, servants | **COMPLAINT AND JURY DEMAND** |
| and/or employees, KIDS CENTERS OF | |
| AMERICA, its agents, servants, and/or | |
| employees, STRAIGHT FOUNDATION, | |
| INC., its agents, servants, and/or employees, | |
| DRUG FREE AMERICA FOUNDATION, | |
| INC., its agents, servants and/or employees, | |
| "ABC CORP 1-10", and "JOHN AND/OR | |
| JANE DOES 1-10" (the last three being | |
| fictitious designations), | |
| | |
| Defendants. | |

Plaintiff, JOHN DOE, whose initials are W.K, by his attorneys, LAW OFFICES
ROSEMARIE ARNOLD, LLP respectfully alleges, upon information and belief, as follows:

## THE PARTIES

1.      Plaintiff JOHN DOE, whose initials are W.K., (hereinafter "Plaintiff" or "John

Doe" or "Plaintiff John Doe") resides in New York State and can be reached through his attorneys,

Law Office of Rosemarie Arnold, LLP, at 1386 Palisade Avenue, Fort Lee, New Jersey 07024.

2.     A pseudonym for the Plaintiff is used to preserve privacy in this matter, which is sensitive and highly personal in nature, identification of Plaintiff poses a risk of mental harm, harassment, ridicule and/or personal embarrassment, and because the case involves information of the utmost intimacy. **Plaintiff's application to proceed anonymously is being filed simultaneously with this Complaint.**

3.     At all times relevant hereto, from approximately 1991 to 1992, Plaintiff was a minor involuntarily confined at Defendant KIDS OF NORTH JERSEY (hereinafter "Defendant KONJ" or "KONJ") and/or KIDS CENTERS OF AMERICA (hereinafter "Defendant KCOA" or "KCOA") and/or STRAIGHT FOUNDATION, INC. (hereinafter "Defendant Straight" or "Straight") and/or DRUG FREE AMERICA FOUNDATION, INC., (hereinafter "Defendant DFAF" or "DFAF").

4.     Defendants KONJ, KCOA, Straight, and DFAF may hereinafter collectively be referred to as "Institutional Defendants."

5.     At all times relevant hereto, the Institutional Defendants were/are a chain of "drug treatments centers" known for their well-documented and confirmed horrifying mental, physical, and sexual abuse upon tens of thousands of children, which is a conservative estimate, including Plaintiff.

6.     Upon information and belief, Institutional Defendants were owned and operated in part by Defendant VIRGIL MILLER NEWTON (hereinafter "Miller Newton" or "Defendant Miller Newton").

7.     Upon information and belief, Defendants KCOA, KONJ, and Straight are defunct entities, corporations, parent companies, shell companies, and/or non-profits.

2

8.      Upon information and belief, in an effort to distance themselves from allegations of child abuse[1], KONJ, KCOA, and Straight were renamed DFAF in 1995, which operates "drug treatment centers" to this day.

9.      As Defendant Miller Newton opened, operated, and closed several different corporate entities, it is unclear which entity owned and operated the KONJ Secaucus facility at the time Plaintiff was involuntarily confined and abused, but this will be fully explored during discovery.

10.     Defendants ABC CORP 1-5 and/or JOHN DOE 1-5 and/or JANE DOE 1-5 are fictitious names and represent entities and/or individuals who may bear responsibility for the sexual abuse and assaults described herein, but whose identities cannot be ascertained as of the filing of this Complaint. Such fictitious defendants may include, but are not limited to, current and/or former employees, agents, and/or servants of Defendants, individuals associated with any of the Defendants, and/or entities associated with any of the Defendants. Plaintiff hereby reserves the right to amend this Complaint upon learning the true identities of these defendants through discovery.

11.     All Defendants may hereinafter collectively be referred to as "Defendants."

## FACTS COMMON TO ALL COUNTS

### *Background*

12.     In May 1984, Defendants opened KIDS of Bergen County ("KOBC") in Hackensack, New Jersey.

---

[1] http://thestraights.net/miller-newton-story.htm

13.    In April 1989, the Bergen County Prosecutor's Office found that the children at KOBC suffered from, *inter alia*, black eyes, strip searches, sleep deprivation, solitary confinement, and denial of right to leave when some clients reached the age of 18.

14.    In August 1990, 20 Bergen County officials descended upon KOBC to question children about the abuse they suffered at the hands of Defendants.

15.    Shortly after Bergen County prosecutors moved on KOBC in August 1990, Defendants moved their operations to a warehouse in Secaucus, New Jersey (pictured below), and changed the program's name to KIDS of North Jersey (KONJ).



Pictured above is the KONJ warehouse located at 200 Seaview Avenue in Secaucus, New Jersey where Plaintiff was involuntarily confined and abused. Marker "a" points to a blackened area which was the glass front for KIDS which occupied a small corner of the warehouse. Marker "b" points to a neighboring warehouse.

16.    However, the allegations and charges of child abuse continued mounting against Defendants despite the name change and relocation to Hudson County.

17.    Inside this windowless, dark warehouse, the staff members and employees of Defendants inflicted horrifying mental, physical, and sexual abuse upon hundreds of children, including Plaintiff, in the 1990s.

18.    From 1991 through 1992, the then-minor Plaintiff was confined against his will at the warehouse located at 200 Seaview Avenue in Secaucus, New Jersey. Such premises were

4

owned, operated, supervised, maintained, controlled, and inspected by Defendants and their agents, servants, and employees.

19.    Plaintiff was sexually harassed, abused, and assaulted while involuntarily confined at Defendants' warehouse in Secaucus, New Jersey when he was a minor.

20.    Defendants' former staff members allege that Defendant Miller Newton directed them to physically assault children and stated he would "turn his back" while they did so. See West 57th KIDS and Straight Inc.. Virgil Miller Newton Exposed, Part 1, CBS, 1989, at 6:00.

21.    In 1993, three counselors were convicted of beating a child at the KONJ facility. One of the counselors. Michael O'Connor, said that beatings were "routine" at KONJ. Judge Emil DelBaglivo, the Secaucus trial judge, publicly remarked that it was "almost unbelievable" that the director of the program, a man with "supposedly " strong credentials, would allow and condone the use of violence. "We find the institution highly questionable and someone should look into it," he said. "We think there's something radically wrong." See http://thestraights.net/miller-newton-story.htm *and* The Record, dateline Secaucus, p. d01, 12-24-93, author Neal Thompson.

22.    The above are just a few examples of the well-documented horrific abuse and torture inflicted upon children by Defendants under the guise of "rehabilitation." There are various websites dedicated solely to memorializing the stories of survivors who suffered abuse and torture at Defendants' facilities.

23.    It is abundantly clear based upon the mountain of evidence that the sexual and physical abuse of children in Defendants' facilities was well reported and well known before, during, and after Plaintiff's abuse, yet Defendants intentionally failed to act on such reports and knowledge.

24.     At all times relevant hereto, the Defendants, including their agents, servants, and employees, were in the business of providing care, and supervision to minor children, such as Plaintiff.

25.     At all times relevant hereto, Plaintiff was a minor under the care and supervision of the Defendants and their agents, servants, and employees.

26.     At all times relevant hereto, Defendants had a heightened duty to properly safeguard and supervise children over whom they assumed the care, custody, and control including Plaintiff.

27.     At all times relevant hereto, Defendants breached that duty by failing to properly safeguard, supervise, care for, and protect the then-minor Plaintiff from harm while he was under their care and supervision, which has caused Plaintiff to become seriously and permanently injured.

### ***Plaintiff John Doe's Story***

28.     In 1991, Plaintiff was a young recording artist in New York City with a promising future and bright career ahead as a hip hop artist. By the age of 16, Plaintiff had performed as the opening act for famous rappers, such as Ice Cube, and had recorded original tracks.

29.     Sadly, as Plaintiff was just embarking upon his career as a successful musician, his father caught him smoking marijuana and, for what his father believed to be for Plaintiff's own good, made secret plans to send him away to the Institutional Defendant's program for his "drug use."

30.     In 1991, Plaintiff was only 16 years old when he was violently kidnapped while sleeping by a security guard employed by Institutional Defendants, forced into a van, and driven

to the warehouse in Secaucus, New Jersey. Plaintiff was taken from his home without any belongings, clothes, a toothbrush, or any personal effects.

31.    Understandably, Plaintiff felt terrified and confused, and his chest was pounding so intensely that he believed he was experiencing a heart attack.

### *The Kids of North Jersey Program*

32.    When he arrived at the warehouse, Plaintiff was forced to adhere to Defendants five-phase program.

33.    All children started off in the first phase and were called "newcomers." As a newcomer in the first phase, Plaintiff was forced to spend 7 days a week, 24 hours per day, for the first 4 months, confined to the warehouse in Secaucus, New Jersey.

34.    The main group room, where Plaintiff spent the majority of his time, has been described as a huge, empty room with a cold, hard, tile floor, and high ceilings with fluorescent lighting and filled with blue chairs.

35.    "Court papers and people who attended KIDS described it as a warehouse where "newcomers" would sit on blue chairs in a large group for 12 hours a day, confessing their mistakes and chanting about honesty, sexual abstinence, and kicking drugs." See Lingering Torment from Rough Therapy, Religion News Blog, April 9, 2000, https://www.religionnewsblog.com/17239/kids-of-north-jersey.

36.    Plaintiff tried to escape the warehouse on the first day he arrived, but he was immediately tackled by about 20 people who violently restrained him, pulled his hair, and threw him onto the ground.

37.    From this point forward, Plaintiff was forcefully drugged by Defendants' staff members to make him docile and to prevent any further escape efforts.

7

38.     Plaintiff, as well as all the other children confined to the Defendants' warehouse, were completely cut off from friends, family and the entire outside world. They were not allowed to speak or read freely and would be punished for even reading off a cereal box.

39.     The children, including Plaintiff, were expected to sit all day in the blue chairs, facing forward, with their backs straight, and their hands on their knees.

40.     All children, including Plaintiff, were forced to participate in "rap sessions" where they had to engage in an activity called "motivating," which involved them flailing their hands in the air and making odd sounds.

41.     The 12-hour "rap sessions" were depicted in CBS documentary West 57th KIDS and Straight Inc., Virgil Miller Newton Exposed, Part 1, CBS, 1989. The documentary shows the children sitting in blue chairs in a windowless room while flapping their arms wildly in the air. The narrator stated that children "get attention by flapping their arms, it's called motivating. If they motivate hard enough, they get to talk about their "problems." Id. at 2:25.

42.     One child was rushed to the hospital with bleeding from the scalp and blurred vision after being dropped on his head during a "rap session." See West 57th KIDS and Straight Inc. Virgil Miller Newton Exposed, Part 2, CBS, 1989, at 1:00.

43.     When Plaintiff refused to participate in the "rap sessions" he was thrown to the ground and violently restrained by multiple staff members. During the restraints, Defendants' staff members and employees often groped Plaintiff's penis and testicles while they held him on the ground for extended periods of time.

44.     Many children, including Plaintiff, were forced to share made-up stories about their "past struggles," even if they had no past struggles to disclose. Failing to make up a story about

8

prior drug use or "sexual deviance" would result in severe punishment, such as physical violence, restraints, and deprivation of food and water.

45.     Plaintiff and the other children were forced to walk in what has been described as a "chain gang" anytime they went anywhere, even to the shower or bathroom. Each child was forced to place their fingers in the belt loops of the pants of the child or staff member in front of them to create the "chain gang."

46.     The "chain gang" style walking was depicted in the CBS documentary West 57th KIDS and Straight Inc., Virgil Miller Newton Exposed, CBS, 1989. The documentary shows the children walking with their hands attached to the pants of the person in front of them; the narrator described it as follows "first phasers are belt looped, lead everywhere, even to the bathroom, by more senior phasers." Id. at 3:25.

47.     If the children let go of the belt loops of the person in front of them, the child was thrown to the ground and violently restrained for extended periods of time while the staff and employees used all their weight to hold the children down so they could not move at all.

48.     The children were not permitted to spend any time alone, even in the bathroom and shower.

49.     Plaintiff was forcibly drugged by Defendants' employees and staff, including purported "doctors."

50.     While Plaintiff was not advised of the names of the drugs he was forced to ingest, he recalls that the medications caused him to be groggy, subdued, and docile.

51.     On one occasion, Plaintiff was forced to take a large pill that made him shake violent uncontrollably until he passed out; as a result, Plaintiff was unable to function for several days and believed he was dying.

52.     There are periods of time where Plaintiff has little recollection of what happened because he was so severely drugged.

53.     Plaintiff was often violently restrained by Defendants' adult employees, staff, and counselors.

    a.      To be restrained, Plaintiff and other children were forced onto their stomachs, flattened out, and restrained by 5 different counselors and staff members.

    b.      This was referred to as "5-point restraint" because it required 5 individuals to restrain 1 child.

    c.      The children, including Plaintiff, were restrained in this painful position for hours at a time.

    d.      During the restrain process, the children were also sexually abused, which is discussed further below.

    e.      Plaintiff was restrained in a "5-point-restraint" 2-3 times each week, sometimes more.

    f.      Plaintiff was regularly choked, slapped, thrown to the ground and restrained with his arms, hands, neck, and ankles twisted and his face shoved to the ground.

    g.      In a CBS News Documentary, 2 former patients that became staff members admitted to physically abusing children at the facilities [under the direction of Defendants] and restraining them on the floor for up to 9.5 hours while the kids cried and screamed. See KIDS and Straight, Inc., Part 2, CBS News, date unknown, at 1:30.

### *Sexual Abuse at The Kids of North Jersey Warehouse*

54.     Defendants' employees and staff members ripped Plaintiff's clothes off, threw him into the shower, and watched as he bathed himself on a regular basis.

55.     Upon Plaintiff's arrival to Defendants' warehouse, he was quickly approached by one of the counselors, Shannon, who tried to persuade Plaintiff to have sex with him.

56.     After this, countless other adult counselors and staff members propositioned Plaintiff for sex.

57.     On Plaintiff's first day in the warehouse, about 5 counselors and staff members violently ripped off his clothes, touched and groped his penis and testicles for sexual gratification, and threw him in the shower. This happened on a regular basis throughout the time Plaintiff was detained in the warehouse.

58.     Defendants' adult employees, counselors, and staff members routinely gawked at Plaintiff's penis and testicles as they watched him shower or use the bathroom.

59.     During the process of the 5-point restraint, as referenced above, the adult counselors and staff sat on Plaintiff's chest and rubbed their penises and testicles on Plaintiff's chest and body.

60.     On at least one occasion, Plaintiff was restrained for no reason as he was exiting the shower completely naked. The adult staff members violently tackled Plaintiff to the ground and sat on him while rubbing their bodies on his bare penis for sexual gratification.

61.     One of the counselors, Shannon, pulled down Plaintiff's pants and underwear on at least one occasion and told all the other children to "look at [Plaintiff's] penis."

62.     Many adult members of the Defendants' staff frequently revealed their own penises and testicles to Plaintiff and the other children on a regular basis for their own perverse sexual gratification.

63.     In 2007, Nick Gaglia, who was involuntarily confined at the KONJ warehouse with Plaintiff, made a film about the abuse he endured titled "Over the GW."

11

64. Mr. Gaglia also addressed Congress on Capitol Hill on February 19, 2009, to speak about the horrific abuse and torture he experienced at KONJ. See https://www.imdb.com/video/vi1229390361/?ref_=nm_vids_vi_6.

65. During his speech, he detailed how he was sexually assaulted by staff members while being restrained.

66. Mr. Gaglia was sexually abused by staff members at the KONJ warehouse and since his escape he has been told many stories of rape and molestation from other survivors of KIDS. See Laura Tompkins, Nick Gaglia – The Cult – KIDS of North Jersey, Patch, July 26, 2013.

### *Continued Sexual Abuse in the Host Homes*

67. After being completely confined to the warehouse 24 hours a day for his first 3-4 months in the program, Plaintiff began to transition to various host homes at night.

68. Although Plaintiff was transferred to host homes at night to sleep, he was still forced to spend all day, every day in the Secaucus warehouse. He was transported to a host home only for sleep and then transported back to the warehouse early each morning.

69. The host homes were the actual dwellings of higher-level children, usually phase four or five, and their parents, also known as host parents.

70. All the host homes were equipped with bars and locks on the doors and windows to prevent the children from escaping.

71. Defendants' adult employees and staff members stayed in the host homes with the children ostensibly to prevent them from escaping, but used their positions of power and privacy in the host homes to sexually abuse the children.

72. The host homes were, for all intents and purposes, unregulated and unlicensed foster homes.

12

73.     At the host homes, Plaintiff was not allowed to leave or go outside, he was not even permitted to look out the windows and could face severe punishment for doing so.

74.     Each host home had at least 1 staff member or counselor who had complete control over all the children.

75.     At the host homes, the staff members and counselors carried out the same abusive practices and tactics that were undertaken in the warehouse.

76.     Plaintiff was frequently restrained, thrown on the ground, and choked by the staff and counselors while they forcefully grabbed Plaintiff's penis and testicles for their own sexual gratification.

77.     The staff members and counselors also exposed their genitals to Plaintiff and the other children in the host homes and forced Plaintiff to expose his genitals as well.

78.     The male counselors and staff would engage in sex acts with each other and some of the children while Plaintiff and the others were forced to watch.

*Escaping the Program*

79.     Eventually, Plaintiff was able to stop taking the medications Defendants were forcing upon him by hiding it under his tongue and discarding it when staff members were not looking.

80.     Plaintiff was very careful to avoid detection because that would result in him being forcibly injected with the medications.

81.     When he stopped taking the medications, Plaintiff was able to think clearly and plan his escape from the brutal torture and abuse he endured daily in the program.

82.     Sometime in 1992, Plaintiff was finally able to escape the program by running from the host home he was staying at in Fort Lee, New Jersey. He was 17 years old at the time.

13

83.     On the day he escaped, Plaintiff was walking out of the host home in a "chain gang" with the other children, including three other children.

84.     As the "chain gang" was walking outside from the host home to the car that was intended to transport them to the warehouse, Plaintiff jerked the fingers of the child behind him out of his belt loops and yelled "that's it!!" The boys looked at each other briefly and then started running away from the host home as fast as they could.

85.     One child, who was only 15 years old at the time, got scared and ended up returning to the host home when the boys were about 1 block away.

86.     The other 3 boys, including Plaintiff, continued running for several blocks until they stopped to walk.

87.     The boys walked to the George Washington Bridge and decided to part ways, with 2 of the boys staying in New Jersey and Plaintiff returning to New York.

88.     In 1998, the KIDS of North Jersey program was closed down by state regulators for child abuse.

### *Life After the Program*

89.     Although Plaintiff had a promising music career before he was kidnapped and forced into the Defendants' program, he became severely depressed and suffered from debilitating PTSD, nightmares, flashbacks, hot flashes, anger, agitation, heart palpitations, and so many other physical and emotional manifestations of the abuse and trauma he endured in the program, which has completely and permanently eradicated his ability to focus on a musical career to this day.

90.     At 50 years old, Plaintiff has no job, no career, and lives with his father as he has no other options and is financially destitute because of the grievous trauma that has ravaged his life since escaping the Defendants' program.

14

91.     Plaintiff also experiences memory loss from being heavily drugged during his time
at Defendants' facilities and his personality was completely changed by the time he finally escaped.

92.     Plaintiff was merely a shell of the bright, young child he was before the program
inflicted its violence, cruelty, and abuse upon him.

93.     Since his escape, Plaintiff has been hospitalized in a psych ward on several
occasions due to PTSD from the program.

94.     As a direct result of the abuse, Plaintiff still experiences anxiety, depression, and
symptoms of PTSD.

95.     Plaintiff is still consistently haunted by the harrowing sexual abuse he endured as a
child at the hands of Defendants and the long-lasting, debilitating trauma resulting from such abuse
will serve as a constant reminder of same until the day he dies.

96.     To say that Defendants ruined Plaintiff's life is a vast understatement.

97.     The allegations set forth above are not intended to be an exhaustive list of all the
allegations against Defendants, but merely a representative sample.

## FIRST CAUSE OF ACTION
### Sexual Abuse of a Minor
### In Violation of the Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1, *et seq.* and the
### Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

98.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding
paragraphs as if fully set forth herein.

99.     The factual allegations set forth above sufficiently demonstrate that Defendants,
including its agents, servants and employees, sexually abused Plaintiff while he was a minor under
the age of 18 and under their care, custody, and control.

15

100. The conduct of Defendants, including its agents, servants and/or employees, rises to the level of sexual abuse and sexual contact as defined by the New Jersey Child Sexual Abuse Act.

101. At all times relevant hereto, Defendants, including their agents, servants, and/or employees, were aware, or at the very least should have been aware, of the sexual abuse occurring at their facilities and perpetrated by their agents, servants, and/or employees.

102. At all times relevant hereto, Defendants, including their agents, servants, and employees, caused and/or knew and/or should have known of their employees, staff members, and counselors' sexual proclivities towards minors and the sexual abuse of Plaintiff, a minor under their care.

103. At all times relevant hereto, pursuant to the New Jersey Child Sexual Abuse Act, Defendants stood *in loco parentis* to Plaintiff.

104. At all times relevant hereto, Defendants had a duty to properly safeguard and supervise minors over whom they assumed the care, custody, and control, including Plaintiff.

105. At all times relevant hereto, Defendants had a duty to exercise reasonable care and to hire, utilize, train, supervise, and retain only competent, qualified, and trained employees to authorize, organize, create, set up, operate, staff, manage, maintain, control, and supervise its facilities and to safeguard and supervise the minors under their custody.

106. At all times relevant hereto, Defendants breached the aforementioned duties by failing to properly safeguard, supervise, care for, and protect the minor Plaintiff from harm while he was under their care and supervision, which has caused Plaintiff to become seriously and permanently injured.

16

107. At all times relevant hereto, Defendants breached the aforementioned duties by negligently hiring, improperly training, supervising, and retaining Defendants' employees, staff, and counselors whom Defendants caused and/or knew and/or should have known were unfit for their job and had unlawful sexual proclivities towards minors.

108. At all times relevant hereto, Defendants breached the aforementioned duties by failing to institute appropriate precautions and preventative measures to safeguard minors, including Plaintiff, from being left alone or unsupervised with Defendants' employees, staff, and counselors who had unlawful sexual desires for minors.

109. As a direct and proximate cause and reasonably foreseeable result of the sexual abuse, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

**SECOND CAUSE OF ACTION**
**Sexual Assault and Battery of a Minor**
**In Violation of New Jersey Common Law and**
**the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq*.**
**Against Individual Defendants Virgil Miller Newton and John and/or Jane Does 1-10**

110.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

111.    The factual allegations set forth above sufficiently demonstrate that Defendants sexually assaulted and battered Plaintiff, a minor, on the premises of the Defendants.

112.    Defendants committed the assault and battery with the intent to cause harm to Plaintiff.

113.    As a direct and proximate cause and reasonably foreseeable result of the sexual abuse, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Individual Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

18

## THIRD CAUSE OF ACTION
### Negligence, Including Negligent Hiring, Training, Supervision, and Retention
### In Violation of New Jersey Common Law, the Child Sexual Abuse Act, N.J.S.A. § 2A:61B-1,
### *et seq.* and the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

114.     Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115.     At all times relevant hereto, Plaintiff was a minor under the care and supervision of the Defendants and their agents, servants, and employees.

116.     At all times relevant hereto, pursuant to the Child Sexual Abuse Act, the Defendants stood *in loco parentis* to Plaintiff.

117.     At all times relevant hereto, Defendants had a duty to properly safeguard and supervise children over whom they assumed the care, custody, and control, including Plaintiff, which includes the duty and obligation to take reasonable precautions for the child's safety and well-being.

118.     At all times relevant hereto, Defendants had a duty to exercise reasonable care and to hire, utilize, train, supervise, and retain only competent qualified, and trained employees to authorize, organize, create, set up, operate, staff, manage, maintain, control, and supervise its facility and to safeguard and supervise the children.

119.     At all times relevant hereto, Defendants breached the aforementioned duties by failing to properly safeguard, supervise, care for, and protect minor Plaintiff from harm while he was under their care and supervision, which has caused Plaintiff to become seriously and permanently injured.

120. At all times relevant hereto, Defendants breached the aforementioned duties by negligently hiring, improperly training, supervising, and retaining their employees, staff, and counselors.

121. At all times relevant hereto, Defendants breached the aforementioned duties by failing to institute appropriate precautions, preventative measures, and policies to safeguard the children under their care from being left alone or unsupervised with unfit employees, staff, and counselors who had unlawful sexual proclivities towards minors.

122. All of the acts of sexual abuse and sexual contact occurred when Plaintiff was a minor child under the care, custody, and control of Defendants and while he was on their premises and in their facilities.

123. At all times relevant hereto, Defendants, including their agents, employees, and staff, caused and/or knew and/or should have known that Plaintiff was being sexually abused by agents and employees under their supervision and control.

124. As a direct and proximate cause and reasonably foreseeable result of the sexual abuse, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with

interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## FOURTH CAUSE OF ACTION
### Discrimination, Harassment, and Hostile Environment on the Basis of Sex
### In Violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*
### Against All Defendants

125. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

126. As established by the factual allegations set forth herein, Plaintiff was subjected to discrimination, harassment, and a hostile environment on account of his sex/gender.

127. Plaintiff would not have been subjected to such discrimination, harassment, and hostile environment but for the fact that he is a male.

128. Any reasonable person of the same age, maturity level, and sex as Plaintiff would have considered the discrimination, harassment, and hostile environment to which Plaintiff was subjected to be sufficiently severe and pervasive enough to create an intimidating, hostile, and offensive environment.

129. Plaintiff was a minor under the care and supervision of the Defendants and their agents, servants, and employees.

130. As a direct and proximate cause and reasonably foreseeable result of the discrimination, harassment, and hostile environment, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

21

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## FIFTH CAUSE OF ACTION
### *Respondeat Superior*
### In Violation of New Jersey Common Law and
### the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

131.  Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

132.  The School Defendants are liable for the negligent acts and/or omissions of their agents, servants, and/or employees under the doctrine of *respondeat superior.*

133.  As a direct and proximate cause and reasonably foreseeable result of the intentional conduct, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

22

## SIXTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### In Violation of New Jersey Common Law and
### the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

134.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

135.    As established by the factual allegations set forth above, Defendants' intentional, or at the very least reckless, conduct was extreme and outrageous and caused Plaintiff to suffer extreme, severe emotional distress.

136.    As a direct and proximate cause and reasonably foreseeable result of the intentional conduct, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## SEVENTH CAUSE OF ACTION
### False Imprisonment
### In Violation of New Jersey Common Law and
### the Child Victims Act, N.J.S.A. § 2A:14-2, *et seq.*
### Against All Defendants

137. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

138. As established by the factual allegations set forth above, Defendants knowingly and unlawfully restrained Plaintiff against his will and interfered with his liberty and freedom of movement.

139. At all times relevant hereto, Defendants intended to cause confinement.

140. As a direct and proximate cause and reasonably foreseeable result of the false imprisonment, Plaintiff suffered and continues to suffer severe and permanent injuries, great pain and torment, both physical and mental, and has been and will in the future be compelled to spend great and diverse sums of money for medical aid and treatment, and has been and will be prevented from attending to his usual occupation, duties, activities, and business, and has suffered severe economic, financial, and emotional distress damages.

**WHEREFORE** Plaintiff demands judgment against Defendants jointly and severally for compensatory damages, non-compensatory damages, punitive damages, attorney fees, emotional distress damages for mental anguish, embarrassment, humiliation, and indignity, together with interests and costs of suit, and any such other and further relief as the Court deems fair and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Hannah E. Bacon, Esq. is designated as trial counsel.

## DEMAND FOR DISCOVERY OF INSURANCE INFORMATION

Pursuant to R. 4:10-2(b) demand is made that Defendants disclose to undersigned counsel whether or not there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy part or all of a judgment that may be entered in this action, or indemnify or reimburse of payments made to satisfy the judgment, and provide undersigned counsel copies of any such agreements or policies.

## CERTIFICATION

I hereby certify that this matter is not the subject of any other action pending in any court or arbitration proceeding, that no such other action or arbitration proceeding is contemplated by this Plaintiff, and that there are no other parties, whom, to the knowledge of the Plaintiff's counsel, should be joined in this action.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: April 17, 2025

/s/ Hannah E. Bacon
HANNAH E. BACON

25

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-001475-25

**Case Caption:** DOE JOHN VS MILLER NEWTON VIRGIL

**Case Initiation Date:** 04/17/2025

**Attorney Name:** HANNAH E BACON

**Firm Name:** ROSEMARIE ARNOLD LLP

**Address:** 1386 PALISADE AVE

FORT LEE NJ 07024

**Phone:** 2014611111

**Name of Party:** PLAINTIFF : DOE, JOHN

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** ASSAULT AND BATTERY

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?** NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by:** JOHN DOE? YES
**Plaintiff's date of birth:** 10/03/1974
**Est. date of first incident of abuse:** 01/01/1991

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/17/2025                                            /s/ HANNAH E BACON
Dated                                                              Signed

# eSignature Details

**Signer ID:**     **BFSQfLdM54gY8Ry1CWb61QCC**
Signed by:     Amy Ronshausen
Sent to email:     aronshausen@dfaf.org
IP Address:     35.139.88.161
Signed at:     Jun 19 2025, 3:06 pm EDT